UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSE MOREIRA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 15-13720-LTS |
| CITIMORTGAGE, INC., | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM (DOC. NO. 21)

September 8, 2016

SOROKIN, J.

Plaintiff Jose Moreira ("Moreira") filed a five-count Complaint against Defendant CitiMortgage, Inc. ("CitiMortgage") in Middlesex Superior Court, stemming from CitiMortgage's refusal to provide Moreira with a mortgage loan modification. Doc. No. 1-2 at 5-13. CitiMortgage removed the case to this Court, Doc. No. 1, and subsequently moved to dismiss the Complaint, Doc. No. 9. Instead of opposing the motion, Moreira filed the operative three-count Amended Complaint. See Doc. No. 11. CitiMortgage then filed a second Motion to Dismiss for Failure to State a Claim. Doc. No. 21. Moreira opposed the motion, Doc. No. 23, and CitiMortgage filed a reply brief, Doc. No. 27. As explained below, CitiMortgage's motion is ALLOWED IN PART and DENIED WITHOUT PREJUDICE IN PART.

I.  FACTUAL BACKGROUND[1]

Moreira owns property at 62-64 Flint Street, Somerville, Massachusetts ("The Property"). Doc. No. 11 ¶ 1. He currently lives with his wife in a different property. Id. ¶ 13. In 2005, he purchased the Property by signing a promissory note which CitiMortgage now holds, granting it a mortgage. Id. ¶ 6; see Doc. No. 22-3. Moreira derived rental income from the Property, but in 2008, after the Property suffered structural damage, he defaulted on the loan. Doc. No. 11 ¶ 7. Moreira has subsequently repaired this damage and now has steady rental income from the property. Id. In 2009, Moreira applied for a loan modification, which CitiMortgage denied. Id. ¶ 8. He unsuccessfully sued CitiMortgage over this denial in Middlesex Superior Court. Id. ¶ 9. In 2012, Moreira, following his attorney's advice, conveyed the property to A B C LLC ("A B C"), a Massachusetts limited liability corporation of which Moreira was the sole manager. Id. ¶ 10. A B C dissolved in 2015. Id. Also in 2012, CitiMortgage modified Moreira's loan. Id. ¶ 11. He nevertheless defaulted on that loan. Id.

In Fall 2013, Moreira again began applying for a loan modification with CitiMortgage ("2013 Modification Application"). Id. ¶ 12. He applied under the Home Affordable Modification Program ("HAMP"), a federal program designed to provide foreclosure relief. Id. ¶¶ 14-15. His income includes rental income from the Property, income from his wife for childcare, and commissions for business referrals from a local contractor. Id. ¶ 13. CitiMortgage's participation in HAMP required it to review Moreira's application and "offer him loss mitigation assistance if he qualified." Id. ¶ 17. Moreira included in his application, among

---

[1] Given the motion to dismiss posture, the Court "recite[s] the facts as alleged in the complaints and documents incorporated therein by reference." Lister v. Bank of Am., N.A., 790 F.3d 20, 22 (1st Cir. 2015). The Court also draws from other documents sufficiently mentioned in the Complaint. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

other things, the leases for the Property, bank accounts verifying his income, and affidavits "explaining his income and need for a loan modification." Id. ¶ 18. He promptly responded to CitiMortgage's requests for additional materials. Id. ¶ 19. CitiMortgage, claiming that Moreira failed to provide all the requested documents, denied the 2013 Modification Application. Id. ¶ 20.

In February 2014, Moreira submitted another modification application to CitiMortgage ("2014 Modification Application"). Id. ¶ 21. Moreira included a proposed modification proposal under HAMP. Id. ¶ 22. After receiving his application, CitiMortgage, between February and November 2014, "continually requested that [Moreira] resubmit the same documents over and over again and provide repeated explanations on [sic] his income." Id. ¶ 24. While Moreira timely complied with these requests, id. ¶ 25, CitiMortgage denied the 2014 Modification Application on November 7, 2014, claiming an "irreconcilable discrepancy within [his] application request." Id. ¶ 26.

In 2015, Moreira applied for yet another modification ("2015 Modification Application"). Id. ¶ 27. In January 2015, with the aid of counsel, he "participated in an in-depth initial phone call regarding his eligibility for a loan modification" with CitiMortgage. Id. ¶ 28. This call included Moreira explaining, "in depth," his need for a modification and "specific explanations as to the amount of income that he earned each month and where it came from." Id. CitiMortgage's loss mitigation representative informed Moreira after this phone call "that it appeared that he qualified for a loan modification." Id. ¶ 29.

Moreira then decided to pursue the 2015 Modification Application further. Id. ¶ 30. He submitted an application including: leases for the Property, showing consistent rental income; bank accounts proving his income; affidavits explaining his income and need for a modification;

and an affidavit from his wife, proving the income he received from her. Id. ¶ 31. From January through May 2015, CitiMortgage repeatedly requested Moreira to provide the same documents and explanations of his income. Id. ¶ 32. Specifically, CitiMortgage repeatedly asked for more information about a painting business Moreira purportedly had. Id. ¶ 34. During that time, Moreira submitted seven supplements to his application with the requested documents and information. Id. ¶ 33. These included multiple records and explanations indicating he did not have a painting business. Id. ¶ 35.

On May 1, 2015, CitiMortgage, citing an "irreconcilable discrepancy," denied the 2015 Modification Application. Id. ¶ 36. CitiMortgage also denied the 2015 Modification Application on the grounds that Moreira rented out the property on a seasonal, non-year-round basis. Id. Moreira appealed the denial. Id. ¶ 37. As part of his appeal, he gave CitiMortgage year-round leases to the Property and requested an explanation of the "irreconcilable discrepancy" which prompted CitiMortgage to deny his application. Id.

CitiMortgage denied Moreira's appeal on June 2, 2015. Id. ¶ 39. It again noted an "irreconcilable discrepancy" in Moreira's application, and did not specify further. Id. In a subsequent phone call, a CitiMortgage representative cited Moreira's alleged, yet non-existent, painting business and $50,000 in unaccounted-for income as causes of the denial. Id. ¶ 40. As CitiMortgage had already denied his appeal, Moreira had no avenue to address these issues. Id. ¶ 41.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted).  This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized."  United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992).  Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

While the Court typically "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment," Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F. 3d 30, 33 (1st Cir. 2001), there is an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Watterson, 987 F.2d at 3.

III.    DISCUSSION

Moreira alleges three claims of relief against CitiMortgage: 1) unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A (Count I), see Doc. No. 11 at 7-8; promissory estoppel (Count II), id. at 8; and equitable estoppel (Count III), id. at 8-9.

CitiMortgage has moved to dismiss all three counts. See Doc. No. 21. The Court discusses each Count in turn, grouping the estoppel claims together, as the parties do in their briefs.

    A.    <u>Mass. Gen. Laws ch. 93A (Count I) Claim</u>

"Chapter 93A is a broad, Massachusetts consumer protection statute. A plaintiff seeking relief under Chapter 93A must prove that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" <u>Walsh v. TelTech Sys., Inc.</u>, 821 F.3d 155, 160 (1st Cir. 2016) (quoting Mass. Gen. Laws ch. 93A, § 2). While violating HAMP does not automatically give rise to a 93A claim, HAMP violations "may support Chapter 93A claims when they are inherently unfair and deceptive." <u>Sullivan v. Bank of N.Y. Mellon Corp.</u>, 91 F. Supp. 3d 154, 174 (D. Mass. 2015). "Under Chapter 93A, an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" <u>Walsh</u>, 821 F.3d at 160 (quoting <u>PMP Assocs. v. Globe Newspaper Co.</u>, 321 N.E.2d 915, 917 (Mass. 1975)). Unfair acts or practices are "generally . . . of an egregious, non-negligent nature. Under Chapter 93A, an act or practice is deceptive if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he [or she] would have acted." <u>Id.</u> (citations and quotation marks omitted).

    Moreira alleges multiple unfair and deceptive business practices from CitiMortgage. The first is that CitiMortgage "repeatedly requir[ed] him to resubmit the same documents over and over again and provide repeated explanations over the contents of his application." Doc. No. 11 ¶ 47. Specifically, Moreira claims (and the Court assumes as true) that he submitted seven supplements to his 2015 Modification Application, <u>id.</u> ¶ 33, in response to repeated requests from CitiMortgage between January and May of 2015. <u>Id.</u> ¶ 32. He also alleges that he, on

multiple occasions, submitted affidavits and bank statements responding to CitiMortgage's concerns about a painting business, which indicated that he did not have in fact have any such business. Id. ¶¶ 34-35.

The second unfair and deceptive business practice Moreira posits is that CitiMortgage "repeatedly den[ied his] loan modifications for ambiguous and false reasons," and that this lack of specificity precluded Moreira's ability to appeal the denials. Id. ¶ 48. Specifically, he alleges (and the Court accepts as true) that CitiMortgage initially denied the 2015 Modification Application on the grounds that there was an unspecified "irreconcilable discrepancy" in his application and that he derived only seasonal, not year-round, rental income from the Property. Id. ¶ 36. CitiMortgage subsequently denied Moreira's appeal, citing again the unexplained "irreconcilable discrepancy," id. ¶ 39, and, in a subsequent phone call, Moreira's purported, yet nonexistent, painting business and $50,000 in unexplained income, id. ¶ 40. CitiMortgage reached this conclusions in spite of Moreira's submission of affidavits explaining his income and leases for the Property showing "consistent rental income." See id. ¶ 31.[2] And, because CitiMortgage did not explain the irreconcilable discrepancy until after denying Moreira's appeal, he "had no means of addressing these purported reasons for denial." Id. ¶ 41.

CitiMortgage argues two deficiencies in Moreira's allegations. Both are unavailing. First, CitiMortgage asserts that Moreira has not alleged facts showing that CitiMortgage acted in bad faith, as opposed to merely negligently. Doc. No. 22 at 11. That assertion does not comport with the Amended Complaint. Moreira specifically alleged numerous instances of

---

[2] While Moreira does not allege that he specifically gave CitiMortgage leases showing year-round tenants at the Property until after CitiMortgage's initial denial of the 2015 Modification Application on May 1, 2015, see Doc. No. 11 ¶¶ 36, 38, the Court can, in the 12(b)(6) posture, reasonably infer that the leases to the Property that Moreira did provide as part of the 2015 Modification Application, see id. ¶ 31, included year-round leases.

CitiMortgage's troubling conduct regarding the 2015 Modification Application alone (setting aside entirely the 2013 and 2014 Modification Applications), including: sending seven supplements to his 2015 Modification Application (including documents he had already sent); explaining repeatedly, yet to no avail, that he did not have a painting business; denying the 2015 Modification Application on the grounds that Moreira only accrued seasonal rental income from the Property, when the application included evidence that Moreira earned year-round rental income; penalized Moreira, repeatedly, for an unexplained "irreconcilable discrepancy," even though Moreira provided extensive documentation regarding his income; did not explain to Moreira the nature of the "irreconcilable discrepancy" until after it denied his appeal; and rooting the "irreconcilable discrepancy" in Moreira's non-existent painting business.  This pattern of conduct suffices to plausibly allege that CitiMortgage acted with the requisite bad faith.  See Sullivan, 91 F. Supp. 3d at 175 ("In the end, looking at the totality of Defendants' conduct as alleged, the court has little trouble concluding that Defendants engaged in unfair and deceptive business practices in violation of Chapter 93A.") (emphasis added).

      CitiMortgage next contends that Moreira failed to plausibly allege that its conduct regarding the 2015 Modification Application caused Moreira injury.  Specifically, CitiMortgage postulates that it is implausible to say Moreira would have received a modification both because he was in default at the time of the 2015 Modification Application, and because Moreira had conveyed the Property to A B C LLC prior to submitting the 2015 Modification Application.  This argument fails for two reasons.  First, even assuming that Moreira has not plausibly alleged that he would have received a modification but for CitiMortgage's misconduct, Moreira has alleged CitiMortgage's unfair and deceptive conduct caused increased debt on his loan, damage to his credit score, increased fees on his loan, costs associated with the various loan modification

applications.  Doc. No. 11 ¶ 49.  These allegations suffice at this stage of the proceedings.  See Young, 717 F.3d 224, 241-42 (1st Cir. 2013).

Second, Moreira has sufficiently alleged that he plausibly would have received a modification but for the misconduct.  The fact that a CitiMortgage representative told him that he appeared to qualify for a loan modification, Doc. No. 11 ¶ 29, indicates that, notwithstanding his history of defaulting, CitiMortgage was at least open to the idea of offering Moreira a modification.  Whether he would in fact have received one is a fact question which discovery will help illuminate.  For that reason, CitiMortgage's motion is DENIED WITHOUT PREJUDICE to renewal at summary judgment for Count I.

B.     Promissory Estoppel (Count II) and Equitable Estoppel (Count III) Claims

"Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission."  Sullivan v. Chief Justice for Admin. and Mgmt. of Trial Court, 858 N.E.2d 699, 711 (Mass. 2006) (quoting Bongaards v. Millen, 793 N.E.2d 335, 339 (Mass. 2003)).  The difference between promissory estoppel and equitable estoppel claims centers around the temporal nature of the misrepresentation—the former concern misrepresentations of future intent, the latter past or present facts.  Id. at 28 n.9.  Regardless, the representation at issue must be unambiguous.  See R.I. Hosp. Trust Nat. Bank v. Varadian, 647 N.E.2d 1174, 1178 (Mass. 1995); accord Egan v. Tenet Health Care, No. 15-14169-FDS, 2016 WL 3561866, at *9 (D. Mass. June 27, 2016).

Moreira relies solely on the representation that CitiMortgage's loss mitigation representative made in informing Moreira "that it appeared that he qualified for a loan

9

modification." Doc. No. 11 ¶ 29.  This statement clearly falls short of an unambiguous promise that CitiMortgage would provide Moreira with a modification.  Inter alia, it left open the possibility that CitiMortgage's further review of a more detailed application from Moreira would prove this initial conclusion incorrect.  In fact, other sessions of this court have reached a similar conclusion.  See Almedia v. U.S. Bank. Nat'l Ass'n, No. 12-11565-RWZ, 2014 WL 907673, at *5 (D. Mass. Mar. 10, 2014).  Accordingly, CitiMortgage's motion is ALLOWED for Counts II and III, and those claims are DISMISSED.

IV.     CONCLUSION

For the foregoing reasons, CitiMortgage's motion is ALLOWED IN PART and DENIED WITHOUT PREJUDICE IN PART.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge